## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **North America's Building Trades Unions,**<br>815 16th Street, N.W.<br>Suite 600<br>Washington, D.C. 20006,<br><br>**Baltimore-D.C. Metro Building and Construction Trades Council**,<br>5829 Allentown Road<br>Camp Springs, MD,<br><br>*Plaintiffs,*<br><br>v.<br><br>**Department of Defense,**<br>1000 Defense Pentagon<br>Washington, D.C. 20301,<br><br>**Peter B. Hegseth,** *in his official capacity as Secretary of Defense,*<br>1000 Defense Pentagon<br>Washington, D.C. 20301,<br><br>**General Services Administration,**<br>1800 F Street, N.W.<br>Washington, D.C. 20006, *and*<br><br>**Stephen Ehikian,** *in his official capacity as Acting Administrator of General Services,*<br>1800 F Street, N.W.<br>Washington, D.C. 20006,<br><br>*Defendants.* | No. 25-cv-1070 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    The Department of Defense and the General Services Administration

have taken it upon themselves to ignore a binding Executive Order concerning the construction of their large-scale construction projects, causing Plaintiff North America's Building Trades Unions ("NABTU") and its affiliated chartered building and construction trades councils, including Plaintiff Baltimore-DC Metro Building and Construction Trades Council, irreparable harm.

2.      Executive Order 14063, 87 Fed. Reg. 7,363 (Feb. 9, 2024), provides that "agencies shall require every contractor or subcontractor engaged in construction on [a large-scale construction] project to agree, for that project, to negotiate or become a party to a project labor agreement with one or more appropriate labor organizations." *Id.* at 7,364.  A senior official may grant an exception to those requirements "for a particular contract" if certain circumstances exist and it does so no later than the solicitation date.  *Id.*

3.      Although promulgated by President Biden, Executive Order 14063 has not been revoked.  Upon taking office, President Trump revoked 67 Executive Orders and 11 Presidential Memoranda issued by President Biden.  *See* Executive Order 14148, titled "Initial Recissions of Harmful Executive Orders and Actions," 90 Fed. Reg. 8,237 (Jan. 28, 2025).  Absent from the list of 78 revoked Executive Orders and Presidential Memoranda, and absent from every other Executive Order issued by President Trump, is Executive Order 14063.  Therefore, Executive Order 14063 remains binding on federal agencies.  Yet, the Department of Defense and the General Services Administration have said that they will not comply with its requirements and that they have instructed their contracting officers to take actions

2

directly contrary to Executive Order 14063.

4.     Those agencies have issued memoranda overriding Executive Order 14063's project labor agreement ("PLA") requirement for entire classes of projects. The Department of Defense's memorandum did not provide any reasoning.  And the General Services Administration's memorandum, though framed as an application of the order's exceptions, excepted *all* Land Ports of Entry construction projects, rather than apply the exceptions on a case-by-case basis "for a particular contract" as required by the order and its implementing regulations.  That memorandum relied on nonbinding precedent that the U.S. Department of Justice has said did not overturn the requirements of Executive Order 14063.

5.     The Administrative Procedure Act requires that courts "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2) & (A).

6.     Because the Defendants' memoranda are contrary to the plain language of Executive Order 14063 and its implementing regulations, and because the Department of Defense's memorandum is not supported by any reasoning whatsoever, the memoranda are unlawful and should be set aside.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction under 28 U.S.C. § 1331 because the claims alleged in this Complaint arise under the Administrative Procedure Act, 5 U.S.C. § 702.

8.     Venue is proper in this Court under 28 U.S.C. § 1391(e)(1).  Defendants are agencies and officers of agencies of the United States acting in their official

capacity.  The memoranda that gave rise to the claims were issued from the District of Columbia, Defendants maintain principal offices in the District of Columbia, and NABTU resides in the District of Columbia.

## PARTIES

9.     Plaintiff NABTU is a labor organization composed of fourteen national and international unions and over 330 provincial, state, and local building and construction trades councils that NABTU charters, that together represent more than three million workers.  NABTU is also known as the Building and Construction Trades Department of the AFL-CIO, but its governing Constitution authorizes it to do business as NABTU.  NABTU has challenged past actions with respect to Executive Orders that concern project labor agreements.  *Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002).  NABTU brings this action in its own right and on behalf of its member labor organizations and chartered state and local councils.

10.     Plaintiff Baltimore-DC Metro Building and Construction Trades Council is a local council chartered by NABTU, and is a labor organization composed of 28 local building and construction trades unions in the Maryland, Washington, D.C., and Northern Virginia areas.  The Baltimore-DC Building and Construction Trades Council works to secure improved wages, hours and working conditions for the construction workers it represents through the process of collective bargaining including the negotiation of project labor agreements.

11.     Defendant Department of Defense ("DOD") is an executive department of the United States.  10 U.S.C. § 111(a).

12.    Defendant Peter B. Hegseth is the Secretary of Defense and is head of DOD.  10 U.S.C. § 113(a)(1).  He is sued in his official capacity.

13.    Defendant General Services Administration ("GSA") is an agency in the executive branch of the federal government.  40 U.S.C. § 301.

14.    Defendant Stephen Ehikian is the Acting Administrator of General Services and is head of the GSA.  40 U.S.C. § 302(a).  He is sued in his official capacity.

## FACTS

## I.    Project Labor Agreements Have Been Used for Decades to Accommodate the Unique Needs of Large Construction Projects, Including Federal Government Projects.

15.    PLAs are comprehensive collective bargaining agreements negotiated between building and construction trades unions, like NABTU and its chartered councils, and owners, contractors, and/or construction managers.

16.    Congress authorized the use of PLAs under Sections 8(e) and (f) of the National Labor Relations Act, 29 U.S.C. § 158(e), (f).  Section 8(f) allows unions and employers in the construction industry to enter into prehire agreements that will apply after the employer hires workers and begins construction.  Section 8(e) generally prohibits agreements that limit the entities with which an employer may do business, but it contains a construction-industry proviso that permits agreements to limit work on a construction project to contractors that agree to be bound by the PLA.

17.    In the construction industry, contractors often hire employees on a short-term basis, and contracts are commonly let to multiple contractors and subcontractors, each performing part of the job.  PLAs accommodate these issues by

establishing a single labor relations structure that applies to all contractors, subcontractors, and employees operating on the construction project for the project's duration.

18.    PLAs set standard work rules, establish various forums for communication and coordination, and prevent work stoppages with no-strike, no-lockout provisions and speedy dispute-resolution mechanisms. They also set standard pay and benefit rates for each trade and address labor supply issues through provisions that commit the signatory unions to use their job referral procedures. By requiring all contractors to be bound by a single labor contract, PLAs ensure that work rules and conditions on a construction project are standardized, eliminating the numerous conflicting practices of the individual contractors.

19.    PLAs have been used in both the public and private sector for decades. The federal government has used PLAs to systematize labor relations on its large and complex construction projects since at least 1938. *See, e.g.*, U.S. Gen. Acct. Off., GAO/GGD-98-82, *Project Labor Agreements: The Extent of Their Use and Related Information* 4 (1998) (tracing the use of PLAs on federal and other publicly funded projects back to the construction of the Grand Coulee Dam in Washington State in 1938 and the Shasta Dam in California in 1940).[1]

## II.    Executive Order 14063 Requires Agencies to Use PLAs on Large-Scale Construction Projects, with Case-by-Case Exceptions.

20.    Many Presidents in recent history have issued executive orders and

---

[1]    https://www.gao.gov/assets/ggd-98-82.pdf (last visited Apr. 1, 2025).

directives with respect to the use of PLAs by the Federal Government.  Executive Order 12818, 57 Fed. Reg. 48,713 (Oct. 28, 1992) (issued by President George H.W. Bush); Executive Order 12836, 58 Fed. Reg. 7,045 (Feb. 3, 1993) (issued by President Clinton); Presidential Memorandum of June 5, 1997 (issued by President Clinton); Executive Order 13202, 66 Fed. Reg. 11,225 (Feb. 22, 2001), amended by Executive Order 13208, 66 Fed. Reg. 18,717 (Apr. 11, 2001) (issued by President George W. Bush); and Executive Order 13502, 74 Fed. Reg. 6,985 (Feb. 11, 2009) (issued by President Obama).

21.     On February 4, 2022, President Biden issued Executive Order 14063, titled "Use of Project Labor Agreements for Federal Construction Projects."  87 Fed. Reg. 7,363 (Feb. 9, 2022).

22.     Executive Order 14063 applies to "large-scale construction projects," which Section 2(c) of the order defines as domestic federal construction projects "for which the total estimated cost of the construction contract to the Federal Government is $35 million or more."  87 Fed. Reg. at 7,363.

23.     In accordance with Section 3 of Executive Order 14063, agencies must "require every contractor or subcontractor engaged in construction on [a large-scale construction] project to agree, for that project, to negotiate or become a party to a project labor agreement with one or more appropriate labor organizations."  87 Fed. Reg. at 7,364.

24.     Section 4 provides several requirements for PLAs negotiated under the order:

a. They must "bind all contractors and subcontractors on the construction project;"

b. They must "allow all contractors and subcontractors on the construction project to compete for contracts and subcontracts without regard to whether they are otherwise parties to collective bargaining agreements;"

c. They must "contain guarantees against strikes, lockouts, and similar job disruptions;"

d. They must contain "effective, prompt, and mutually binding procedures for resolving labor disputes;"

e. They must "provide other mechanisms for labor-management cooperation on matters of mutual interest and concern, including productivity, quality of work, safety, and health;" and

f. They must "fully conform to all statutes, regulations, Executive Orders, and Presidential Memoranda."

87 Fed. Reg. at 7,364.

25. Under Section 5 of the order, agencies "may grant an exception" from the PLA requirement "for a particular contract by, no later than the solicitation date, providing a specific written explanation" of why one or more enumerated circumstances "exists with respect to that contract." Those circumstances are:

a. "Requiring a project labor agreement on the project would not advance the Federal Government's interests in achieving

8

economy and efficiency in Federal procurement," given the duration and complexity of the project, the number of trades involved on the project, the number of contractors or subcontractors able to perform the specialized construction work, any "unusual and compelling urgency" that would make a PLA "impracticable," or other similar factors enumerated in regulations or guidance issued pursuant to the order;

b.    "[R]equiring a project labor agreement on the project would substantially reduce the number of potential bidders so as to frustrate full and open competition," based on an "inclusive market analysis;" and

c.    "Requiring a project labor agreement on the project would otherwise be inconsistent with statutes, regulations, Executive Orders, or Presidential Memoranda."

87 Fed. Reg. at 7,364.

26.    Section 8(a) of Executive Order 14063 required the FAR Council to propose and adopt regulations implementing the order.  87 Fed. Reg. at 7,365.

27.    The FAR Council proposed those regulations on August 19, 2022.  *See* Federal Acquisition Regulation: Use of Project Labor Agreements for Federal Construction Projects, 87 Fed. Reg. 51,044 (Aug. 19, 2022).  After the public comment period, the FAR Council issued a final rule on December 22, 2023, implementing Executive Order 14063, effective January 22, 2024.  *See* Federal Acquisition

Regulations: Use of Project Labor Agreements for Federal Construction Projects, 88 Fed. Reg. 88,708 (Dec. 22, 2023) (codified at FAR pts. 1, 7, 22, 36, and 52).

28.     The implementing regulations require agencies to "require use of project labor agreements for contractors and subcontractors" on large-scale construction projects, "unless an exception . . . applies."  FAR 22.503(b), 48 C.F.R. § 22.503(b).  The requirements and exceptions in the final rule mirrored the language in the order.  *See* FAR 22.504, 48 C.F.R. § 22.504.  As explained in the FAR Council's preamble to the final rule, the exceptions are intended to be applied on a "case-by-case" basis.  88 Fed. Reg. at 88,712, 88,715, 88,717, 88,719.

29.     In accordance with Section 8(b) of Executive Order 14063, 87 Fed. Reg. at 7,365, the Office of Management and Budget ("OMB") issued guidance on December 18, 2023, concerning exceptions to the PLA requirement and reporting.  A true and correct copy of that guidance is attached hereto as Exhibit A.

30.     The OMB guidance memorandum explains that "[a]gencies should ensure they are taking full advantage of PLAs on large-scale construction contracts."  Under the order and the FAR rule, "agencies are required to: (1) conduct and document inclusive market research for all large-scale construction projects and require PLAs unless an exception applies, (2) ensure that any exception is approved by the senior procurement executive (SPE), and (3) report PLA activity and exceptions with supporting explanation of exceptions to OMB."

31.     As explained in the OMB memorandum, the market analysis "must be contemporaneous on a project-specific basis."   The memorandum explains that

agencies must "identify *both* union and non-unionized contractors that may be interested in participating in the competition," since "participation in a competition with a PLA should not put [non-unionized contractors] at a competitive disadvantage."

32.    The OMB memorandum's template for reporting on PLA requirement exceptions refers to specific "solicitation number[s]" and "solicitation date[s]." There is no reference to a "class exception" or any similar method for overriding Executive Order 14063 for entire classes of projects.

## III.    NABTU and Its Local Council Affiliates, Including the Baltimore-DC Metro Building and Construction Trades Council, Enter into PLAs on Projects Covered by the Executive Order.

33.    NABTU and its chartered local councils enter into hundreds of PLAs in the public and private sector each year setting forth the terms of conditions of employment for particular construction projects.

34.    NABTU and its chartered local councils are, and would continue to be, signatory to many PLAs that are directly affected by Executive Order 14063 and the memoranda discussed below.

35.    NABTU itself is signatory to a PLA on a $137 million project awarded under Executive Order 14063 involving construction of canals awarded by Defendant DOD, U.S. Army Corps of Engineers, in connection with its multi-billion dollar Indian River Lagoon-South project in Florida.

36.    NABTU chartered affiliate San Antonio Building and Construction Trades Council is signatory to a PLA covering a $238 million project to construct a training complex at Lackland Air Force solicited by Defendant DOD, U.S. Army

Corps of Engineers; NABTU chartered affiliate Seattle Building and Construction Trades Council is signatory to a PLA to construct a $657 million fish passage facility for the Howard Hanson Dam solicited by Defendant DOD, U.S. Army Corps of Engineers; NABTU chartered affiliate El Paso Building and Construction Trades Council is signatory to a PLA for a $71 million construction and expansion of the railyard at Fort Bliss, Texas solicited by Defendant DOD, U.S. Army Corps of Engineers; NABTU chartered affiliate Western Wisconsin Building and Construction Trades Council is signatory to a PLA for the construction of a $55 million Collective Training Officers Quarters project at Fort McCoy solicited by Defendant DOD, U.S. Army Corps of Engineers; NABTU chartered affiliate Central Pennsylvania Building and Construction Trades Council is signatory to a PLA for a $37 million project to construct the Letterkenny Munitions Center solicited by Defendant DOD, U.S. Army Corps of Engineers; and NABTU chartered affiliate Minneapolis Building and Construction Trades Council is signatory to a PLA for a $30 million project to construct the Maintenance/Renovation Army Reserves Building at Fort Snelling, Minnesota, solicited by Defendant DOD, U.S. Army Corps of Engineers.

37.    Plaintiff and NABTU chartered affiliate Baltimore-DC Metro Building and Construction Trades Council is signatory to a PLA for a $38 million renovation of an aircraft hangar at Joint Base Andrews solicited by Defendant DOD with a PLA requirement under the Executive Order and to a PLA for a $46 million renovation of Building 154 at the Naval Support Facility, Indian Head, Maryland, which was also solicited by Defendant DOD with a PLA requirement.

38.    The examples in paragraphs 36 and 37 are but a few examples of PLAs entered into by NABTU and/or its chartered affiliate state and local building and construction trades councils for projects covered by Executive Order 14063.  NABTU and its charted affiliate state and local building and construction trades councils would continue to negotiate and enter into PLAs solicited pursuant to Executive Order 14063, but for the Defendants' unlawful actions in refusing to comply with Executive Order 14063.

## IV.    Defendants Issue Memoranda that Override Executive Order 14063.

### A.    *Department of Defense*

39.    On February 7, 2025, John M. Tenaglia, Principal Director, Defense Pricing, Contracting, and Acquisition Policy, for the Office of the Under Secretary of Defense, Acquisition and Sustainment, issued a memorandum titled "Class Deviation — Waiver of Project Labor Agreement Requirements" (hereinafter "DOD Memorandum").  A true and correct copy of the DOD Memorandum is attached hereto as Exhibit B.

40.    Under FAR 1.404, 48 C.F.R. § 1.404, agencies can implement class deviations from FAR requirements "when necessary to meet the specific needs and requirements of [the] agency," but they may not do so if the class deviation is "precluded by law, executive order, or regulation."  FAR 1.402, 48 C.F.R. § 1.402.

41.    The DOD Memorandum directs that its "contracting officers shall not use project labor agreements for large-scale construction projects," and "[c]ontracting officers shall amend solicitations to remove project labor agreement requirements." The class deviation was "[e]ffective immediately" and "remains in effect until

13

rescinded."

42.     DOD did not provide any reasoning for why the class deviation was necessary.

43.     As a result of the DOD Memorandum, DOD is not only refusing to require PLAs on any of its projects, even though Executive Order 14063 remains in effect and requires PLAs on all large-scale construction projects, but DOD is prohibiting its contracting officers from using PLAs on any large-scale construction project.

### B.     General Services Administration

44.     On February 12, 2025, Jeffrey A. Koses, Senior Procurement Executive for the Office of Acquisition Policy issued a memorandum titled "Class Exception to Requiring a Project Labor Agreement for Land Ports of Entry" (hereinafter "GSA Memorandum").  A true and correct copy of the GSA Memorandum is attached hereto as Exhibit C.

45.     The GSA Memorandum "grant[s] a 'class exception'" from the PLA requirements "for all Land Port of Entry (LPOE) construction projects."  The term "class exception" is not found in Executive Order 14063, its implementing FAR regulations, or the OMB guidance memorandum.

46.     Contrary to the plain language of Executive Order 14063, its implementing FAR regulations, and the OMB guidance memorandum, the GSA Memorandum does not evaluate whether exceptions apply to "particular" construction projects on a "case-by-case" basis.  Instead, it concludes that "multiple conditions exist continually on GSA LPOE projects" that merit exceptions, "and there

is no expectation that these conditions will end." The GSA Memorandum does not refer to any single construction project as evidence for its broad conclusions that "including a PLA requirement for projects in remote rural locations, without strong existing union presence, causes delays," or that "the very limited labor pool and even lower unionization rates" "along the Northern and Southern borders" will likely cause a "substantial reduction in the number of potential offers and a substantial increase in price for future projects."

47.    The GSA Memorandum also links to a contractor association's press release on the Court of Federal Claims' decision in *MVL USA, Inc. v. United States*, 174 Fed. Cl. 437, 2025 U.S. Claims LEXIS 20 (Jan. 21, 2025). In that case, several construction companies filed bid protests, arguing that the FAR PLA requirements violate the Competition in Contracting Act. The court agreed but did not enjoin the FAR provisions or Executive Order 14063. The Department of Justice filed a response on February 24, 2025, in opposition to the plaintiffs' motion for a permanent injunction. In that response, the Department of Justice stated that the U.S. Court of Federal Claims "did not hold that E.O. 14,603 and the regulations implementing it facially violate [the Competition in Contracting Act], but instead held that the agencies' application of those regulations to seven specific procurements violates [the Competition in Contracting Act]." And the Department of Justice recognized that Executive Order 14063 and its implementing regulations contain an exception to the PLA mandate when requiring a PLA for a project would be inconsistent with a statute, such as the Competition in Contracting Act. Therefore, the Department of

Justice asserted, "it would be improper" for the court to order the rescission of Executive Order 14063 "based upon a holding that the agencies' application of those authorities to particular procurements contravened the law." *MVL USA, Inc. v. United States*, Case No. 1:24-cv-01057, Docket #112, U.S. Court of Federal Claims, at 3, 8.

48.    As a result of the GSA Memorandum, the GSA is not requiring PLAs on any Land Port of Entry projects, even though Executive Order 14063 remains in effect and requires PLAs on all large-scale construction projects.

## V.    Defendants' Memoranda Have Irreparably Harmed NABTU and Its Affiliates.

49.    Under Executive Order 14063, the Federal Government has required PLAs on most direct federal procurement construction projects.    These include projects set forth in paragraphs 36 and 37.

50.    To comply with Executive Order 14063, some government contractors have entered into PLAs with NABTU, its affiliate chartered councils, and its affiliated unions.

51.    The DOD and GSA memoranda have excluded whole classes of large-scale construction projects from Executive Order 14063's PLA requirement — projects for which NABTU and its affiliates would otherwise have negotiated agreements.    Because of the DOD and GSA memoranda, contractors are no longer required to turn to building trades unions to negotiate a PLA, and in the case of the DOD cannot do so because DOD now precludes the use of PLAs on large-scale construction projects.    Therefore, the DOD and GSA memoranda have directly

harmed NABTU and its affiliates by forcing a change in their bargaining position, and the memoranda will continue to harm NABTU and its affiliates for the foreseeable future unless enjoined or revoked. Therefore, NABTU has standing to sue in its own right.

52.    NABTU also has standing to sue on behalf of its chartered affiliate councils and labor organizations because they, too, have lost the ability to bargain over PLAs covering large-scale government construction projects because of the DOD and GSA memoranda. The interests of NABTU's affiliates are germane to NABTU's purpose of securing improved wages, hours and working conditions through the process of collective bargaining, including the use of project labor agreements in the construction industry. NABTU itself is a labor organization that negotiates and enters into PLAs, including PLAs covered by Executive Order 14063. Granting the equitable relief NABTU seeks does not require the participation of NABTU's chartered affiliates.

53.    NABTU chartered affiliate South Central Wisconsin Building and Construction Trades Council was in negotiations for a PLA to cover the construction of a USDA Dairy Forage Research Center in Prairie du Sac, Wisconsin. The project is being solicited by Defendant, DOD, U.S. Army Corps of Engineers. The original solicitation contained a PLA requirement in accordance with Executive Order 14063. But on February 14, 2025, Defendant DOD, U.S. Army Corps of Engineers issued an amendment to the solicitation. That amendment extended the due date for offers to April 18, 2025 and stated that "[a]dditional amendment(s) will be issued to remove

the requirement for the Project Labor Agreement (PLA) from the solicitation . . . ." On April 1, 2025, the U.S. Army Corps of Engineers issued an amendment to the solicitation removing the PLA requirement.  But for the amendments, NABTU's chartered South Central Wisconsin Building and Construction Trades Council would negotiate a PLA covering construction of the project.

54.     Baltimore-DC Metro Building and Construction Trades Council has standing to sue in its own right due to DOD's actions.  On January 22, 2025, the DOD's Naval Facilities Systems Command, Washington Contracting Office gave notice of a solicitation for a contract to construct new enlisted quarters and a support facility at the Marine Barracks in Washington, D.C.  This project is estimated between $100 and $250 million.  The January 22, 2025, solicitation stated that, "[a] project labor agreement is required for this large scale construction project. Negotiated Project Labor Agreements shall be submitted at the time offers are due, to be incorporated prior to contract award."

55.     Shortly after the January 22, 2025, solicitation, the Baltimore-DC Metro Building and Construction Trades Council received notice from the contractor with which the council is signatory to PLAs for the projects set forth in paragraph 37 that the contractor was planning to bid on the Marine Barracks project.  The contractor and the Baltimore-DC Metro Building and Construction Trades Council agreed in principle that the same PLA the contractor and the Baltimore-DC Building Trades used for the other Executive Order-covered projects could be used for the Marine Barracks project with minor changes.

56.    Effective February 10, 2025, the DOD's Naval Facilities Systems Command, Washington Contracting Office gave notice of an amendment to the solicitation for the Marine Barracks project.  The amendment extended to March 11, 2025, the date to receive bid proposals.  The amendment also states that "[p]er NAVAC HQ Guidance, PLAs shall not be used for large-scale constructions [sic] projects" and that "[t]herefore, the PLA requirement has been removed from this RFP."  Discussions over a PLA for the Marine Barracks project ceased as a result of the amendment to the solicitation prohibiting the use of a PLA.  The amendment to the solicitation has prohibited the Baltimore-DC Building and Construction Trades Council from providing representation and work opportunities for the members of its affiliated local unions for that project.

**FIRST CLAIM FOR RELIEF**
**(Violation of APA § 706(2) - Contrary to Law — Against DOD and Secretary Hegseth)**

57.    NABTU incorporates by reference each of the paragraphs in this Complaint as if restated fully herein.

58.    The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action" found to be "not in accordance with law."  5 U.S.C. § 706(2) & (A).  Final agency actions "for which there is no other adequate remedy in a court are subject to judicial review."  *Id.* § 704.

59.    The memoranda described in this complaint are final agency actions for which there is no other adequate remedy in a court.

60.    The DOD Memorandum implemented a class deviation from the PLA requirements at FAR parts 22, 36, and 52.

61.    Under FAR 1.402, 48 C.F.R. § 1.402, class deviations may not be issued if they are "precluded by law, executive order, or regulation."

62.    Section 3 of Executive Order 14063 provides that "in awarding any contract in connection with a large-scale construction project, or obligating funds pursuant to such a contract, agencies **shall require** every contractor or subcontractor engaged in construction on the project to agree, for that project, to negotiate or become a party to a project labor agreement with one or more appropriate labor organizations."  87 Fed. Reg. at 7,364 (emphasis added).

63.    Executive Order 14063 is still binding law.  No court has enjoined it, and the federal government is not bound by the Court of Federal Claims' decision in *MVL USA, Inc. v. United States*, 174 Fed. Cl. 437, 2025 U.S. Claims LEXIS 20 (Jan. 21, 2025) with respect to other contracting decisions.  *See United States v. Mendoza*, 464 U.S. 154, 162 (1984).  Defendants cannot "abdicat[e]" their obligation to comply with Executive Order 14063 by implementing memoranda that try to limit the order's effect.  *City of San Francisco v. Trump*, 897 F.3d 1225, 1242 (9th Cir. 2018).  Indeed, in the *MVL USA* case, the Department of Justice has asserted that the plaintiffs' motion for a permanent injunction is improper because the Court of Federal Claims did not determine that the Executive Order is unlawful, but rather only that it violated federal law solely as applied to the individual contracts in that case.

64.    Because the class deviation implemented by the DOD Memorandum prohibits DOD contracting officers from using PLAs, the deviation is precluded by Executive Order 14063 and its implementing regulations, and is therefore not in

accordance with law.

## SECOND CLAIM FOR RELIEF
### (Violation of APA § 706(2) - Contrary to Law — Against GSA and Acting Administrator Ehikian)

65.    NABTU incorporates by reference each of the paragraphs in this Complaint as if restated fully herein.

66.    The GSA Memorandum implemented a "class exception" from the PLA requirements at FAR parts 22, 36, and 52 "for all Land Port of Entry (LPOE) construction projects."

67.    Under Section 5 of Executive Order 14063, exceptions from the PLA requirements are allowed only "for a *particular* contract."  87 Fed. Reg. at 7,364 (emphasis added).

68.    In the final rule implementing Executive Order 14063, the FAR Council explained repeatedly that exceptions may be granted on a "case-by-case" basis.  88 Fed. Reg. at 88,712, 88,715, 88,717, 88,719.

69.    Under FAR 22.504(d)(1), 48 C.F.R. § 22.504(d)(1), exceptions from the PLA requirements are allowed only "with respect to [a] *particular* contract" (emphasis added).

70.    Because the class exception implemented by the GSA Memorandum applies across the board and not to any "particular" contract, it is contrary to Executive Order 14063 and its implementing regulations, and is therefore not in accordance with law.

## THIRD CLAIM FOR RELIEF
### (Violation of APA § 706(2) - Arbitrary and Capricious — Against DOD and Secretary Hegseth)

71.    NABTU incorporates by reference each of the paragraphs in this Complaint as if restated fully herein.

72.    The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action" found to be arbitrary or capricious.  5 U.S.C. § 706(2) & (A).

73.    "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained."  *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  "The agency must make findings that support its decision, and those findings must be supported by substantial evidence."  *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962).

74.    The DOD Memorandum is two paragraphs long.  The first paragraph provides that "contracting officers shall not use project labor agreements for large-scale construction projects," and that "[c]ontracting officers shall amend solicitations to remove project labor agreement requirements."  The second paragraph provides that the "class deviation remains in effect until rescinded."

75.    The DOD Memorandum does not state any reasons to support the class deviation.

76.    Therefore, the DOD Memorandum is arbitrary and capricious.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request the following relief:

A.    A declaration, pursuant to 28 U.S.C. § 2201, that the memoranda described in this complaint are unlawful;

B.      A  preliminary  or  permanent  injunction  enjoining  Defendants  from

enforcing the memoranda described in this complaint;

C.      An order granting costs to Plaintiffs; and

D.      Any other nonmonetary relief the Court deems appropriate.

Respectfully submitted,

/s/ Jacob J. Demree
Jonathan D. Newman (D.C. Bar No. 449141)
Lucas R. Aubrey (D.C. Bar No. 982849)
Jacob J. Demree (D.C. Bar No. 90012042)
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300
newman@shermandunn.com
aubrey@shermandunn.com
demree@shermandunn.com

April 9, 2025