# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**North America's Building Trades Unions, et al.,**

      *Plaintiffs,*

v.

**Department of Defense, et al.,**

      *Defendants.*

No. 1:25-cv-01070-RC

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Jonathan D. Newman (D.C. Bar No. 449141)
Lucas R. Aubrey (D.C. Bar No. 982849)
Jacob J. Demree (D.C. Bar No. 90012042)
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300
newman@shermandunn.com
aubrey@shermandunn.com
demree@shermandunn.com

April 10, 2025

**TABLE OF CONTENTS**

Table of Authorities ...................................................................................................iii

Introduction .......................................................................................................... 1

Statement of Facts...................................................................................................2

    I.     The Federal Government Uses Project Labor Agreements to
          Accommodate the Unique Needs of Large Construction Projects.......... 2

    II.    Federal Contractors Have Relied on NABTU and Its Affiliates to
          Provide Stable Terms and Conditions of Work and Qualified
          Employees on Large-Scale Projects. ........................................................ 4

    III.   The Department of Defense and the General Services
          Administration Have Put a Stop to New Project Labor
          Agreements on Many Large-Scale Projects................................................ 8

Legal Standard ..................................................................................................... 12

Argument .............................................................................................................. 12

    I.     Plaintiffs Are Likely to Succeed on the Merits. ..................................... 12

        A.    Plaintiffs Have Standing............................................................. 12

        B.    The Memoranda Violate the Administrative Procedure
            Act. ............................................................................................. 15

    II.    Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary
          Injunction................................................................................................. 21

    III.   The Balance of Equities and Public Interest Support a
          Preliminary Injunction............................................................................. 23

Conclusion ............................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**                                                                                **Page(s)**

*AFGE v. United States,*
    258 F.3d 1294 (Fed. Cir. 2001) .......................................................................... 17

*Arcamuzi v. Continental Air Lines, Inc.,*
    819 F.2d 935 (9th Cir. 1987)............................................................................... 22

*Bennett v. Spear,*
    520 U.S. 154 (1997) ............................................................................................. 16

*Biden v. Texas,*
    597 U.S. 785 (2022) ............................................................................................. 16

*Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Builders &*
    *Contractors of Mass./R.I., Inc.* (*Boston Harbor*), 507 U.S. 218 (1993) ............. 3

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh,*
    172 F. Supp. 2d 67 (D.D.C. 2001) ..................................................................... 21

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh,*
    172 F. Supp. 2d 138 (D.D.C. 2001), *rev'd*, 295 F.3d 28 (D.C. Cir. 2002).... 13-15

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) ....................................................................................... 16-17

*Burlington Truck Lines, Inc. v. United States,*
    371 U.S. 156 (1962) ............................................................................................. 21

*Chaplaincy of Full Gospel Churches v. England,*
    454 F.3d 290 (D.C. Cir. 2006) ............................................................................ 21

*City of San Francisco v. Trump,*
    897 F.3d 1225 (9th Cir. 2018)............................................................................. 20

*Clinton v. City of New York,*
    524 U.S. 417 (1998) ............................................................................................. 15

*Crowley Gov't Servs., Inc. v. GSA,*
    38 F.4th 1099 (D.C. Cir. 2022)........................................................................... 17

*Damus v. Nielsen,*
    313 F. Supp. 3d 317 (D.D.C. 2018) .................................................................... 23

*FCC v. Prometheus Radio Project,*
　　592 U.S. 414 (2021) ................................................................................... 20

*Fox Television Stations, Inc. v. FilmOn X LLC,*
　　966 F. Supp. 2d 30 (D.D.C. 2013) ............................................................. 22

*Hunt v. Wash. State Apple Advert. Comm'n,*
　　432 U.S. 333 (1997) ................................................................................... 13

*League of Women Voters v. Newby,*
　　838 F.3d 1 (D.C. Cir. 2016) ....................................................................... 21

*Lujan v. Defs. of Wildlife,*
　　504 U.S. 555 (1992) ................................................................................... 12

*Megapulse, Inc. v. Lewis,*
　　672 F.2d 959 (D.C. Cir. 1982) ................................................................... 17

*MVL USA, Inc. v. United States,*
　　174 Fed. Cl. 437, 2025 U.S. Claims LEXIS 20 (Jan. 21, 2025) ................ 9, 19

*N. Mariana Islands v. United States,*
　　686 F. Supp. 2d 7 (D.D.C. 2009) ............................................................... 23

*Nat'l Wildlife Fed'n v. Morton,*
　　393 F. Supp. 1286 (D.D.C. 1975) .............................................................. 18

*Nken v. Holder,*
　　556 U.S. 418 (2009) ................................................................................... 12

*O'Donnell Constr. Co. v. District of Columbia,*
　　963 F.2d 420 (D.C. Cir. 1992) ................................................................... 22

*Pursuing Am.'s Greatness v. FEC,*
　　831 F.3d 500 (D.C. Cir. 2016) ................................................................... 23

*Spokeo, Inc. v. Robins,*
　　578 U.S. 330 (2016) ................................................................................... 12

*Starbucks Corp. v. McKinney,*
　　602 U.S. 339 (2024) ................................................................................... 12

*Sugar Cane Growers Coop. of Fla. v. Veneman,*
　　289 F.3d 89 (D.C. Cir. 2002) ..................................................................... 16

iv

*United States v. Mendoza,*
   464 U.S. 154 (1984) ........................................................................................ 19

*Univ. of Tex. v. Camenisch,*
   451 U.S. 390 (1981) ........................................................................................ 12

*Winter v. NRDC, Inc.,*
   555 U.S. 7 (2008) ............................................................................................ 12

## Statutes

5 U.S.C. § 551(4) ........................................................................................ 15-16

5 U.S.C. § 704 ................................................................................................. 15

5 U.S.C. § 706(2)(A) ........................................................................................ 17

28 U.S.C. § 1491 .............................................................................................. 17

29 U.S.C. § 158(e) ........................................................................................... 2-3

29 U.S.C. § 158(f) ........................................................................................... 2-3

31 U.S.C. § 3551(2)(A) ..................................................................................... 17

41 U.S.C. § 7101(7) .......................................................................................... 17

## Other Authorities

48 C.F.R. § 33.101 ............................................................................................ 17

Def.'s Mot. to Dismiss & Resp. to Pls.' Mot. for Permanent Injunctive Relief,
   *MVL USA, Inc. v. United States*, No. 24-cv-1057, Docket #112 (Fed. Cl.
   Feb. 24, 2025) ..........................................................................................*passim*

Executive Order 13202, 66 Fed. Reg. 11,225 (Feb. 22, 2001) ............................ 13-14

Executive Order 14063, 87 Fed. Reg. 7,363 (Feb. 9, 2022) ................................*passim*

Executive Order 14148, 90 Fed. Reg. 8,237 (Jan. 28, 2025) ....................................... 8

Executive Order 14236, 90 Fed. Reg. 13,037 (Mar. 20, 2025) .................................... 8

FAR 1.401(a), 48 C.F.R. § 1.401(a) ............................................................................. 18

FAR 1.402, 48 C.F.R. § 1.402 ..................................................................... 18

FAR 1.404, 48 C.F.R. § 1.404 ..................................................................... 18

Federal Acquisition Regulation: Use of Project Labor Agreements for Federal
    Construction Projects, 88 Fed. Reg. 88,708 (Dec. 22, 2023) (codified at
    FAR pts. 1, 7, 22, 36, and 52)............................................................. 4

Granite Construction, *Granite Announces $71 Million Rail Yard Expansion
    Project at Fort Bliss, Texas* (Jan. 21, 2025), https://investor.
    graniteconstruction.com/news-and-events/press-releases/year/2025/01-
    21-2025  (last visited Apr. 1, 2025)...................................................... 6

GSA Off. of Governmentwide Pol'y, SPE Memo SPE-2025-05, *Class Exception
    to Requiring a Project Labor Agreement for Land Ports of Entry* (Feb.
    12, 2025) ..................................................................................*passim*

NABTU, *A Sample of NABTU PLAs Across the USA*, https://nabtu.org/a-
    sample-of-nabtu-plas-across-the-usa/ (last visited Apr. 1, 2025)...................... 5

Off. of the Under Sec'y of Def., DARS Tracking No. 2025-O0002, *Class
    Deviation — Waiver of Project Labor Agreement Requirements* (Feb. 7,
    2025) ......................................................................................*passim*

OMB, M-24-06, *Use of Project Labor Agreements on Federal Construction
    Projects* (Dec. 18, 2023) .................................................................. 4

U.S. Army Corps of Eng'rs, Notice ID W9126G24C0023, *Airman Training
    Complex (ATC) 8 at Lackland AFB, San Antonio, Texas* (Sept. 23,
    2024), https://sam.gov/opp/975079676d904e2cab2aabc10d3a3bcd/view
    (last visited Apr. 1, 2025)............................................................... 5-6

U.S. Army Corps of Eng'rs, Notice ID W912DR24C0027, *Letterkenny
    Munitions Center (LEMC) Joint Missile Maintenance Facility,
    Chambersburg, PA* (Aug. 28, 2024), https://sam.gov/opp/2bb0803880c64
    fb9807a140a9722cf32/view (last visited Apr. 1, 2025) ................................ 7

U.S. Army Corps of Eng'rs, Notice ID W912EP21C0023, *Comprehensive
    Everglades Restoration Plan, Indian River Lagoon South C-23/24
    Stormwater Treatment Area St. Lucie County, Florida* (Sept. 28, 2021),
    https://sam.gov/opp/0c919e988f184e8a96610eed19fcde3d/view (last
    visited Apr. 1, 2025) ...................................................................... 5

U.S. Army Corps of Eng'rs, Notice ID W912QR24C0026, *Design-Build Maintenance and Repair Army Reserves (MRAR) Fort Snelling B505* (Aug. 28, 2024), https://sam.gov/opp/e38209e1dd3b451fbd1d91d3846 7a2b9/view (last visited Apr. 1, 2025) ............................................................. 6-7

U.S. Army Corps of Eng'rs, Notice ID W912QR24R0003, *Fort McCoy, WI — Collective Training Officers Quarters* (May 30, 2024), https://sam.gov/ opp/ad1a4e2e2e36454a8f36e76690cc60de/view (last visited Apr. 1, 2025) ....................................................................................................... 6

U.S. Army Corps of Eng'rs, *USACE Awards Howard A. Hanson Dam Fish Passage Contract* (Oct. 18, 2024), https://www.nws.usace.army.mil/ Media/News-Releases/Article/3940011/usace-awards-howard-a-hanson- dam-fish-passage-contract/ (last visited Apr. 1, 2025) ...................................... 6

U.S. Gen. Acct. Off., GAO/GGD-98-82, *Project Labor Agreements: The Extent of Their Use and Related Information* (1998), https://www.gao.gov/ assets/ggd-98-82.pdf (last visited Apr. 1, 2025) ................................................. 2

## INTRODUCTION

Executive Order 14063 requires federal agencies including the Department of Defense ("DOD") and General Services Administration ("GSA") to utilize project labor agreements ("PLAs") on large-scale construction projects unless on a case-by-case basis an agency finds that an exception to that requirement applies. DOD and GSA have taken it upon themselves to refuse to comply with Executive Order 14063 in violation of Executive Order 14063 and its implementing regulations.

North America's Building Trades Unions ("NABTU") is a labor organization composed of fourteen national and international unions and over 330 provincial, state, and local building and construction trades councils representing more than three million workers. Baltimore-D.C. Metro Building and Construction Trades Council ("Baltimore-DC Building Trades") is a local council chartered by NABTU, and is a labor organization composed of twenty-eight local building and construction trades unions in the Maryland, Washington, D.C., and Northern Virginia areas. NABTU and its affiliates, including the Baltimore-DC Building Trades, play a crucial role in negotiating and administering PLAs, including PLAs covered by Executive Order 14063.

DOD and GSA issued memoranda that override Executive Order 14063's PLA requirement. These memoranda are unlawful under the Administrative Procedure Act and will cause irreparable harm to NABTU and its affiliates, including the Baltimore-DC Building Trades. Plaintiffs have sued to require Defendants to comply with the law — an outcome that is squarely in the public's interest. Pending resolution of this case, the Court should grant a preliminary injunction to prevent

1

Defendants from ignoring binding federal law and irreparably harming NABTU and its affiliates, including the Baltimore-DC Building Trades, and the millions of construction workers they represent.

**STATEMENT OF FACTS**

**I.    The Federal Government Uses Project Labor Agreements to Accommodate the Unique Needs of Large Construction Projects.**

Since at least 1938, the federal government has used PLAs to systematize labor relations on large and complex construction projects. *See, e.g.*, U.S. Gen. Acct. Off., GAO/GGD-98-82, *Project Labor Agreements: The Extent of Their Use and Related Information* 4 (1998) (tracing the use of PLAs on federal and other publicly funded projects back to the construction of the Grand Coulee Dam in Washington State in 1938 and the Shasta Dam in California in 1940).[1]  PLAs ensure that work rules and conditions on a construction project are standardized, meaning that all employees on the project are subject to the same terms and conditions of work.

Congress authorized the use of PLAs under Sections 8(e) and (f) of the National Labor Relations Act, 29 U.S.C. § 158(e), (f).  In the construction industry, employers may lawfully sign *prehire* agreements with building and construction trades unions. *Id.* § 158(f).  Therefore, prior to beginning a construction project, a contractor can sign a collective bargaining agreement with building and construction trades unions to guarantee a reliable source of qualified employees, even though employees have not yet been hired.

---

[1]    https://www.gao.gov/assets/ggd-98-82.pdf (last visited Apr. 10, 2025).

Section 8(e)'s construction-industry proviso allows contractors to enter into agreements with labor organizations that limit work on a construction project to those contractors that agree to be bound by the collective bargaining agreement covering the project. That proviso is an exception to the general rule that an employer and a union may not enter into "hot cargo" agreements, in which the employer agrees not to do business with another company. Together, Sections 8(e) and (f) allow for prehire collective bargaining agreements covering all work on a construction project irrespective of whether the work is subcontracted, and that is precisely what a PLA is — a prehire collective bargaining agreement applicable to all contractors and subcontractors performing covered work on a construction site.

Contractors and construction managers negotiate PLAs with building and construction trades unions like NABTU and its affiliates. PLAs set standard work rules, establish forums for communication and coordination, and include no-strike, no-lockout provisions and speedy dispute-resolution mechanisms. They also set standard pay and benefit rates and provide for hiring through signatory unions' job referral systems. *See, e.g., Bldg. & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.* (*Boston Harbor*), 507 U.S. 218, 221-22, 230-32 (1993).

On February 4, 2022, former President Biden issued Executive Order 14063, titled "Use of Project Labor Agreements for Federal Construction Projects." Declaration of Sean McGarvey ("McGarvey Decl.") ¶ 6, Ex. A, 87 Fed. Reg. 7,363 (Feb. 9, 2022). Section 3 of that order mandates that agencies "require every contractor or

subcontractor engaged in construction on [a large-scale construction] project to agree, for that project, to negotiate or become a party to a project labor agreement with one or more appropriate labor organizations." *Id.* at 7,364.

Executive Order 14063's language is mandatory. Per Office of Management and Budget ("OMB") guidance issued in accordance with the order, "[a]gencies should ensure they are taking *full advantage* of PLAs on large-scale construction contracts." McGarvey Decl. ¶ 7, Ex. B, OMB, M-24-06, *Use of Project Labor Agreements on Federal Construction Projects* 3 (Dec. 18, 2023) (emphasis added). Under Section 5 of the Executive Order, agencies "may grant an exception," but only for "particular" contracts, and only with "a specific written explanation" of why the exception should apply "with respect to that contract." McGarvey Decl. Ex. A, 87 Fed. Reg. at 7,364. The preamble to the FAR Council's rule implementing Executive Order 14063 confirms that the exceptions are intended to be applied only on a "case-by-case" basis. McGarvey Decl. ¶ 8, Ex. C, Federal Acquisition Regulation: Use of Project Labor Agreements for Federal Construction Projects, 88 Fed. Reg. 88,708, 88,712, 88,715, 88,717, 88,719 (Dec. 22, 2023) (codified at FAR pts. 1, 7, 22, 36, and 52). And as OMB explained, analysis of whether an exception might apply must be on a "project-specific basis." McGarvey Decl. Ex. B at 3.

## II. Federal Contractors Have Relied on NABTU and Its Affiliates to Provide Stable Terms and Conditions of Work and Qualified Employees on Large-Scale Projects.

Each year, NABTU and its local councils enter into hundreds of PLAs setting out the terms and conditions of employment for particular construction projects.

McGarvey Decl. ¶ 9.[2] NABTU and its affiliates, including the Baltimore-DC Building Trades, have also signed many PLAs that are directly affected by Executive Order 14063.

For example, NABTU is signatory to a PLA on a $137 million project awarded under Executive Order 14063 involving the construction of canals by Defendant DOD, U.S. Army Corps of Engineers for the multi-billion-dollar Indian River Lagoon-South project in Florida.  Employees are working under that PLA to construct infrastructure that will preserve the health of the ecologically diverse lagoon.  McGarvey Decl. ¶ 11; *see* U.S. Army Corps of Eng'rs, Notice ID W912EP21C0023, *Comprehensive Everglades Restoration Plan, Indian River Lagoon South C-23/24 Stormwater Treatment Area St. Lucie County, Florida* (Sept. 28, 2021).[3]

NABTU affiliates are signatory to PLAs on projects solicited by Defendant DOD, U.S. Army Corps of Engineers worth hundreds of millions of dollars.  McGarvey Decl. ¶ 12.  The San Antonio Building and Construction Trades Council is signatory to a PLA covering the construction of a $238 million training complex at Lackland Air Force Base, Texas.  *Id.*; *see* U.S. Army Corps of Eng'rs, Notice ID W9126G24C0023, *Airman Training Complex (ATC) 8 at Lackland AFB, San Antonio,*

---

[2]    *See* NABTU, *A Sample of NABTU PLAs Across the USA,* https://nabtu.org/a-sample-of-nabtu-plas-across-the-usa/ (last visited Apr. 10, 2025).

[3]    https://sam.gov/opp/0c919e988f184e8a96610eed19fcde3d/view (last visited Apr. 10, 2025).

*Texas* (Sept. 23, 2024).[4]  The Seattle Building and Construction Trades Council is signatory to a PLA to construct a $657 million fish passage facility for the Howard Hanson Dam in Washington.  McGarvey Decl. ¶ 12; *see* U.S. Army Corps of Eng'rs, *USACE Awards Howard A. Hanson Dam Fish Passage Contract* (Oct. 18, 2024).[5]  The El Paso Building and Construction Trades Council is signatory to a PLA for a $71 million construction and expansion of the railyard at Fort Bliss, Texas.  McGarvey Decl. ¶ 12; *see* Granite Construction, *Granite Announces $71 Million Rail Yard Expansion Project at Fort Bliss, Texas* (Jan. 21, 2025).[6]  The Western Wisconsin Building and Construction Trades Council is signatory to a PLA for a $55 million project to construct a Collective Training Officers Quarters project at Fort McCoy in Wisconsin.    McGarvey Decl. ¶ 12; *see* U.S. Army Corps of Eng'rs, Notice ID W912QR24R0003, *Fort McCoy, WI — Collective Training Officers Quarters* (May 30, 2024).[7]  Similarly, the Minneapolis Building and Construction Trades Council is signatory to a PLA for the construction of the Maintenance/Renovation Army Reserves Building at Fort Snelling, Minnesota.  McGarvey Decl. ¶ 12; s*ee* U.S. Army

---

[4]    https://sam.gov/opp/975079676d904e2cab2aabc10d3a3bcd/view  (last  visited Apr. 10, 2025).

[5]    https://www.nws.usace.army.mil/Media/News-Releases/Article/3940011/ usace-awards-howard-a-hanson-dam-fish-passage-contract/  (last  visited  Apr.  10, 2025).

[6]    https://investor.graniteconstruction.com/news-and-events/press-releases/ year/2025/01-21-2025  (last visited Apr. 10, 2025).

[7]    https://sam.gov/opp/ad1a4e2e2e36454a8f36e76690cc60de/view  (last  visited Apr. 10, 2025).

Corps of Eng'rs, Notice ID W912QR24C0026, *Design-Build Maintenance and Repair Army Reserves (MRAR) Fort Snelling B505* (Aug. 28, 2024).[8]  And the Central Pennsylvania Building and Construction Trades Council is signatory to a PLA for a $37 million project to construct the Letterkenny Munitions Center in Chambersburg, Pennsylvania.  McGarvey Decl. ¶ 12; *see* U.S. Army Corps of Eng'rs, Notice ID W912DR24C0027, *Letterkenny Munitions Center (LEMC) Joint Missile Maintenance Facility, Chambersburg, PA* (Aug. 28, 2024).[9]

Plaintiff and NABTU affiliate Baltimore-DC Building Trades is signatory to a PLA for the renovation of an aircraft hangar at Joint Base Andrews in Maryland. The DOD solicited this $38 million project with a PLA requirement under the Executive Order.  Declaration of Greg Akerman ("Akerman Decl.") ¶ 6.  The Baltimore-DC Building Trades is also signatory to a PLA for the $46 million renovation of Building 154 at the Naval Support Facility, Indian Head Maryland, also solicited by Defendant DOD.  *Id.* ¶ 7.

These examples are a sample of the PLAs entered into by NABTU and its affiliate state and local building trades councils for projects covered by Executive Order 14063.  NABTU and its affiliates had planned to continue to negotiate and sign PLAs solicited pursuant to Executive Order 14063.  McGarvey Decl. ¶ 13.

---

[8]    https://sam.gov/opp/e38209e1dd3b451fbd1d91d38467a2b9/view (last visited Apr. 10, 2025).

[9]    https://sam.gov/opp/2bb0803880c64fb9807a140a9722cf32/view (last visited Apr. 10, 2025).

III.    **The Department of Defense and the General Services Administration Have Put a Stop to New Project Labor Agreements on Many Large-Scale Projects.**

Though Executive Order 14063 has never been revoked,[10] Defendants have issued memoranda that revoke the PLA requirement with respect to their agencies and/or with respect to certain types of projects. DOD issued its memorandum first, on February 7, 2025. The very short memorandum — only a single page long — provides that "contracting officers shall not use project labor agreements for large-scale construction projects," and that "[c]ontracting officers shall amend solicitations to remove project labor agreement requirements." McGarvey Decl. Ex. D, Off. of the Under Sec'y of Def., DARS Tracking No. 2025-O0002, *Class Deviation — Waiver of Project Labor Agreement Requirements* (Feb. 7, 2025) (hereinafter "DOD Memorandum"). DOD did not provide any reasoning for its action, except that it described the memorandum as a "class deviation."

GSA also put a stop to the PLA requirement on a class of projects, but through what it called a "class exception." Given that, in its view, "multiple conditions exist continually on GSA LPOE [Land Port of Entry] projects" that merit exceptions, and that "there is no expectation that these conditions will end," GSA excepted all Land

---

[10]    Upon taking office, President Trump revoked 78 Executive Orders and Presidential Memoranda issued by former President Biden. Executive Order 14148, titled "Initial Recissions of Harmful Executive Orders and Actions," 90 Fed. Reg. 8,237 (Jan. 28, 2025). On March 14, 2025, President Trump revoked 18 additional Executive Orders, Presidential Memoranda, and Presidential Determinations issued by former President Biden. Executive Order 14236, titled "Additional Rescissions of Harmful Executive Orders and Actions," 90 Fed. Reg. 13,037 (Mar. 20, 2025). Absent from the list of revoked Executive Orders is Executive Order 14063.

Port of Entry projects from the requirements of Executive Order 14063.  McGarvey Decl. Ex. E, GSA Off. of Governmentwide Pol'y, SPE Memo SPE-2025-05, *Class Exception to Requiring a Project Labor Agreement for Land Ports of Entry* 1 n.1 (Feb. 12, 2025) (hereinafter "GSA Memorandum").  GSA's memorandum referred broadly to "projects in remote rural locations, without strong existing union presence" and projects "along the Northern and Southern borders," but it did not mention any specific construction project or market survey as evidence that an exception was warranted.  *Id.* at 2.

GSA linked to an article by a contractor association describing the Court of Federal Claims' decision in *MVL USA, Inc. v. United States*, 174 Fed. Cl. 437, 2025 U.S. Claims LEXIS 20 (Jan. 21, 2025), as evidence that delays caused by solicitations requiring PLAs "increase risk of bid protests."  GSA Memorandum, *supra*, at 2.  In that case, several construction companies filed bid protests, arguing that the PLA requirements were unlawful.  The court granted the bid protests, but it did not enjoin either Executive Order 14063 or its implementing regulations.  2025 U.S. Claims LEXIS 20, at *108-10.

On February 10, 2025, the plaintiffs in that case filed a motion for a permanent injunction seeking to enjoin Executive Order 14603 and order its recission.  The Department of Justice filed a response in opposition to the plaintiffs' motion on February 24, 2025.  In its response, the Department of Justice asserted correctly that the Court of Federal Claims' holding was limited to the application of Executive Order 14063 to the individual contracts in that case.  Moreover, Executive Order 14063 and

its implementing regulations expressly do not apply if their application would be inconsistent with a statute.  Therefore, the Department of Justice stated, "it would be improper" for the court to rescind the order "based upon a holding that the agencies' application of [Executive Order 14063 and its implementing regulations] to particular procurements contravened the law."  Def.'s Mot. to Dismiss & Resp. to Pls.' Mot. for Permanent Injunctive Relief 14, *MVL USA, Inc.*, No. 24-cv-1057, Docket #112 (Fed. Cl. Feb. 24, 2025).

As a result of the DOD and GSA Memoranda, entire classes of large-scale construction projects have been excluded from Executive Order 14063's PLA requirement.  These are projects for which NABTU and its affiliates would otherwise have negotiated agreements.  McGarvey Decl. ¶ 16.  Because contractors on these large-scale projects are no longer required to turn to building trades unions like NABTU and its affiliates to negotiate a PLA, the memoranda have harmed NABTU's and its affiliates' ability to negotiate and administer PLAs for large-scale federal construction projects.  *Id.*

Indeed, the actions of the agencies since issuing the memoranda have already caused NABTU's local councils to lose PLA-covered projects.  Defendant DOD, U.S. Army Corps of Engineers had requested offers for the construction of a USDA Dairy Forage Research Center in Prairie du Sac, Wisconsin with a PLA requirement.  McGarvey Decl. Ex. F at 40.  But on February 14, 2025, DOD amended the solicitation to extend the due date for offers to April 18, 2025 and explained that "[a]dditional amendment(s) will be issued to remove the requirement for the Project Labor

10

Agreement (PLA) from the solicitation . . . ." *Id.* Ex. G at 1.  But for the amendment, NABTU's affiliate South Central Wisconsin Building and Construction Trades Council would negotiate a PLA for the project.  *Id.* ¶ 16.

Plaintiff Baltimore-DC Building Trades has already suffered substantial harm because of DOD's memorandum.  DOD's Naval Facilities Systems Command, Washington Contracting Office gave notice of a solicitation for a contract to construct new enlisted quarters and a support facility at the Marine Barracks in Washington, D.C. on January 22, 2025.  That project is estimated to cost between $100 and $250 million.  According to the original solicitation, "[a] project labor agreement [was] required for this large scale construction project.  Negotiated Project Labor Agreements shall be submitted at the time offers are due, to be incorporated prior to contract award." Akerman Decl. ¶ 8, Ex. A at 6.  A contractor had notified Baltimore-DC Building Trades President Greg Akerman that it was planning to bid on the Marine Barracks project.  That contractor was already working under PLAs with the Baltimore-DC Building Trades for the Joint Base Andrews and Naval Support Facility projects.  Akerman and the contractor agreed that substantially the same PLA could be used on the Marine Barracks project.  *Id.* ¶ 9.

Three days after DOD issued its memorandum, DOD's Naval Facilities Systems Command, Washington Contracting Office amended its solicitation.  The amendment states that "[p]er NAVAC HQ Guidance, PLAs shall not be used for large-scale constructions [sic] projects . . . .  Therefore, the PLA requirement has been removed from this RFP." Akerman Decl. ¶ 10, Ex. B at 2.  Because of the amendment,

11

discussions between the Baltimore-DC Building Trades and the contractor over a PLA for the Marine Barracks project have ceased. *Id.* ¶ 11.

## LEGAL STANDARD

The purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The first two factors — likelihood of success and irreparable harm — "are the most critical," and the last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 434-35 (2009).

## ARGUMENT

**I.    Plaintiffs Are Likely to Succeed on the Merits.**

    **A.    *Plaintiffs Have Standing.***

To establish standing, NABTU and the Baltimore-DC Building Trades have to show an injury in fact that is fairly traceable to Defendants' memoranda and that is likely to be redressed by the requested relief. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "Injury in fact" means "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The memoranda have forced NABTU and its affiliates, including the Baltimore-DC

12

Building Trades, out of the contracting process by not requiring contractors to turn to building trades unions to negotiate a PLA and, in the case of the DOD Memorandum, by precluding the use of PLAs on large-scale construction projects. NABTU and the Baltimore-DC Building Trades unquestionably have standing.[11]

This Court need look no further than its decision in *Building & Construction Trades Department, AFL-CIO v. Allbaugh*, 172 F. Supp. 2d 138 (D.D.C. 2001), *rev'd on other grounds*, 295 F.3d 28 (D.C. Cir. 2002). There, the Building and Construction Trades Department of the AFL-CIO ("BCTD") (now also authorized to do business as NABTU) challenged Executive Order 13202, 66 Fed. Reg. 11,225 (Feb. 22, 2001), which prohibited agencies from requiring or prohibiting PLAs on federal construction projects. NABTU had standing in its individual capacity because it lost a PLA it had negotiated on a project covered by Executive Order 13202 and lost the ability to negotiate similar agreements in the future. The loss of the agreement was "a particularized and concrete harm to BCTD, a labor organization that stood to play an important role in the project as the exclusive bargaining agent," 172 F. Supp. 2d at 147, and the loss of the ability to negotiate similar agreements was "a change in

---

[11]    NABTU and the Baltimore-DC Building Trades have standing in their individual capacities. NABTU also has associational standing on behalf of its affiliates because (1) its affiliates, like the Baltimore-DC Building Trades, "would otherwise have standing to sue in their own right;" (2) NABTU's interests in this litigation about PLAs "are germane to" its purposes as a labor organization in negotiating PLAs and representing building and construction trades councils that negotiate PLAs; and (3) NABTU seeks prospective relief that does not require the participation of individual affiliates. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1997).

bargaining position" that was "itself a particularized and concrete harm," *id.* at 148. NABTU also had associational standing on behalf of its members because "[t]he interests at stake in th[e] litigation — the ability of federal agencies and the recipients of federal funding to require PLAs for their projects — are germane to the purpose of BCTD." *Id.* at 155. Executive Order 13202 was "the *actual* and *only* reason" NABTU and its affiliates lost the ability to negotiate PLAs. *Id.* at 150.

Here, NABTU and the Baltimore-DC Building Trades have lost PLAs they would have negotiated under Executive Order 14063. As explained above, NABTU is signatory to a PLA on a $137 million DOD project — a project that, if bid today, would be precluded from having a PLA. The Baltimore-DC Building Trades is signatory to PLAs for the renovation of an aircraft hangar at Joint Base Andrews and for the renovation of Building 154 at the Naval Support Facility, Indian Head Maryland. Under Defendants' memoranda, both of those projects would have been prohibited from using a PLA. Other NABTU affiliates are signatory to PLAs on projects with Defendants worth hundreds of millions of dollars that if solicited for bids today, would be barred from using a PLA.

Indeed, under Defendants' memoranda, the Baltimore-DC Building Trades has *already* lost a PLA that it would have had for a $100-250 million construction project. Defendant DOD's Marine Barracks project was originally solicited as a PLA-covered project, Akerman Decl. ¶ 8, Ex. A, and a contractor intending to bid on that project had agreed to negotiate a PLA with the Baltimore-DC Building Trades, *id.* ¶ 9. But after DOD issued its memorandum, the solicitation was amended. The amended

14

solicitation states that "PLAs shall not be used for large-scale constructions [sic] projects" and that "[t]herefore, the PLA requirement has been removed . . . ." *Id.* ¶ 10, Ex. B at 2.  As a result, discussions between the contractor and the Baltimore-DC Building Trades over a PLA for the project came to an abrupt halt.  *Id.* ¶ 11.

It is blackletter law that "a denial of a benefit in the bargaining process can itself create an Article III injury." *Clinton v. City of New York*, 524 U.S. 417, 433 n.22 (1998).  NABTU and the Baltimore-DC Building Trades have lost the ability to negotiate PLAs on future projects covered by the memoranda, and the Baltimore-DC Building Trades and other NABTU affiliates have lost PLA-covered projects solicited even before the memoranda were implemented.  As in *Allbaugh*, these injuries are concrete and particularized, and actual or imminent.   But for Defendants' memoranda, NABTU and its affiliates would not have been injured.  Granting the requested relief will require Defendants to comply with Executive Order 14063 and include PLAs on large-scale construction projects, which will redress Plaintiffs' injuries.

### B.    The Memoranda Violate the Administrative Procedure Act.

#### 1.    The Memoranda Are Final Agency Actions for Which There Is No Other Adequate Remedy in a Court.

The substantive issues in this case are not complicated.   Under the Administrative Procedure Act, this Court can review "final agency action[s] for which there is no other adequate remedy in a court."   5 U.S.C. § 704.   Defendants' memoranda are agency actions because they "implement, interpret, or prescribe law or policy or describ[e] the organization, procedure, or practice requirements of an

15

agency." *Id.* § 551(4). The memoranda are themselves "operative agency actions" intended to implement new procedures for issuing contracts, *Biden v. Texas*, 597 U.S. 785, 810 (2022) — like any other "bid submission procedures," Defendants' memoranda set requirements that the agencies and applicants "must follow," *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 96 (D.C. Cir. 2002). And the memoranda are *final* agency actions because they mark the end of the agencies' decision-making process and determine the obligations of future bidders. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

The DOD Memorandum binds agency procurement officials and limits their discretion: "Effective immediately, contracting officers *shall not* use project labor agreements for large-scale construction projects . . . ." DOD Memorandum, *supra* (emphasis added). The GSA Memorandum, though stating only that "[c]ontracting officers are not required to include" the PLA requirement in their Land Port of Entry procurements, is equally binding in practice, since it concludes that PLA requirements "would not advance the Federal Government's interests in achieving economy and efficiency in Federal procurement" and would cause a "substantial reduction in the number of potential offers and a substantial increase in price for future projects." GSA Memorandum, *supra*, at 1-3. No future GSA Land Port of Entry contract will include a PLA requirement under the GSA Memorandum.

An Administrative Procedure Act lawsuit is the *only* way Plaintiffs can seek review of Defendants' memoranda, as there are no other "existing procedures for review" of Defendants' actions in court. *Bowen v. Massachusetts*, 487 U.S. 879, 903

16

(1988). Plaintiffs are not actual or prospective bidders or offerors, and their challenge is not at its essence a contract claim. Therefore, there are no agency review procedures for them to exhaust, *see, e.g.*, 31 U.S.C. § 3551(2)(A); 41 U.S.C. § 7101(7); 48 C.F.R. § 33.101, and Plaintiffs' challenge is not within the exclusive jurisdiction of the Court of Federal Claims, *see* 28 U.S.C. § 1491; *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (citing *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982)); *AFGE v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001).

### 2. The Memoranda Are Not in Accordance with Law.

Under the Administrative Procedure Act, final agency actions must not be "arbitrary, capricious, an abuse of discretion, *or otherwise not in accordance with law*." 5 U.S.C. § 706(2)(A) (emphasis added). Section 3 of Executive Order 14063 — which, the Department of Justice admitted, is still binding on Defendants, *see* Def.'s Mot. to Dismiss & Resp. to Pls.' Mot. for Permanent Injunctive Relief 14, *MVL USA, Inc.*, No. 24-cv-1057, Docket #112 (Fed. Cl. Feb. 24, 2025) — provides that "agencies shall require every contractor or subcontractor engaged in construction on [a large-scale construction] project to agree, for that project, to negotiate or become a party to a project labor agreement with one or more appropriate labor organizations." McGarvey Decl. Ex. A, 87 Fed. Reg. at 7,364. But the DOD and GSA Memoranda each override the PLA requirement for all future public construction projects. As the DC-Baltimore Building Trades' experience shows, Defendants started writing PLA requirements out of solicitations almost immediately after the memoranda were implemented. Defendants now do not require *any* contractor or subcontractor engaged in construction on a large-scale project to agree to a PLA — and DOD

17

precludes PLAs on its large-scale projects entirely. Therefore, the memoranda violate the Administrative Procedure Act because they are contrary to the plain language of Executive Order 14063.

This Court considered similar facts in *National Wildlife Federation v. Morton*, 393 F. Supp. 1286 (D.D.C. 1975). There, an executive order required that the designation of areas and trails for off-road vehicle use be based on the protection of natural resources, safety, risk to wildlife, and other factors. But the Bureau of Land Management "designat[ed] as officially open to ORV [off-road vehicle] use all land not otherwise restricted or closed." *Id.* at 1292. That "blanket designation was done without regard to any of the criteria mandated by the Executive Order" and was, therefore, not in accordance with law. *Id.*

Here, too, the agencies impose "blanket" conditions that contradict the plain language of a binding executive order. None of the possible justifications for Defendants' memoranda hold water. First, DOD frames its memorandum as a "class deviation." Under FAR 1.401(a) and 1.404 (48 C.F.R. §§ 1.401(a), 1.404), class deviations are policies or practices that affect more than one contract action. Agencies may generally make "deviations from the FAR . . . when necessary to meet the[ir] specific needs and requirements," but not if the deviation is "precluded by law, executive order, or regulation." FAR 1.402, 48 C.F.R. § 1.402. Executive Order 14063 could not be clearer: It mandates that "agencies *shall* require" PLAs on large-scale construction projects unless an exception applies. McGarvey Decl. Ex. A, 87 Fed. Reg. at 7,364 (emphasis added). Therefore, class deviations to the FAR regulations

18

implementing Executive Order 14063 are precluded by executive order, and the DOD Memorandum is not in accordance with law.

The GSA Memorandum is also inconsistent with Executive Order 14063. Like the DOD Memorandum, it claims authority under the FAR to exclude an entire class of projects from the PLA requirement. Specifically, the GSA Memorandum claims to implement a "class exception." But as explained above, the plain language of Executive Order 14063 (supported by interpretations by OMB and the FAR Council) requires a case-by-case analysis of whether an exception would apply to a particular contract, and only with a specific explanation of how the exception would apply with respect to that contract. By claiming to create a single class exception that would swallow the PLA requirement for all Land Port of Entry projects, GSA disregarded the requirements under Executive Order 14063 for how an agency may obtain an exemption from the PLA requirement.

The GSA Memorandum refers to the Court of Federal Claims' decision in *MVL USA, Inc.* But that decision does not save the agencies from complying with Executive Order 14063. The court in that case did not issue an injunction against the order, and the court's decision on the merits does not bind Defendants in other cases because nonmutual offensive issue preclusion does not apply against the federal government. *See United States v. Mendoza*, 464 U.S. 154, 162 (1984). And as the Department of Justice argued in response to the *MVL USA, Inc.* plaintiffs' motion for a permanent injunction, "a holding that the agencies' application of [Executive Order 14063 and its implementing regulations] to particular procurements contravened the

19

law" does not mean that the order is unlawful in all circumstances. Def.'s Mot. to Dismiss & Resp. to Pls.' Mot. for Permanent Injunctive Relief 14, *MVL USA, Inc.*, No. 24-cv-1057, Docket #112 (Fed. Cl. Feb. 24, 2025).

Defendants may want to avoid future challenges to their solicitations, but that does not license disobedience with binding law. Agencies cannot "abdicat[e]" their responsibilities under an executive order by issuing memoranda that attempt to narrow the order's application, as the Ninth Circuit held in *City of San Francisco v. Trump*, 897 F.3d 1225, 1242 (9th Cir. 2018). There, the Department of Justice issued a memorandum after a court preliminarily enjoined an executive order that penalized cities and counties that adopted "sanctuary" policies. That memorandum was intended to "render[] the Executive Order a toothless threat." *Id.* at 1241. Though courts generally "give significant weight to an agency interpretation of an executive order," agencies have no authority to act inconsistently with binding law. *Id.* at 1241-42. Instead, agencies, such as Defendants DOD and GSA, must continue to comply with the order.

Therefore, by implementing final agency actions that blatantly contradicted the requirements of Executive Order 14063, Defendants have acted contrary to law and have violated the Administrative Procedure Act.

### 3.    The DOD Memorandum Is Arbitrary and Capricious.

DOD has also violated the Administrative Procedure Act by implementing a final agency action without any reasoning whatsoever. "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). That means

20

"[t]he agency must make findings that support its decision, and those findings must be supported by substantial evidence." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

But DOD's memorandum is two paragraphs long, and it contains no explanation whatsoever for why a class deviation is necessary. Therefore, the DOD Memorandum is arbitrary and capricious in violation of the Administrative Procedure Act.

## II.  Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary Injunction.

Absent a preliminary injunction, NABTU, the Baltimore-DC Building Trades, and other NABTU affiliates will suffer irreparable harm. Harm is irreparable when it is "'certain and great,' 'actual and not theoretical,' and so 'imminen[t] that there is a clear and present need for equitable relief to prevent irreparable harm.'" *League of Women Voters v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)) (alteration in original). The harm must also be "beyond remediation." *Id.* (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297).

Just as with standing, the Court already decided this issue in *Allbaugh*. There, as here, NABTU moved for a preliminary injunction. The Court found that NABTU would "be assured of irreparable harm" absent an injunction against the executive order, which interfered with the implementation of a negotiated PLA. 172 F. Supp. 2d 67, 78 (D.D.C. 2001). Similarly here, NABTU and the Baltimore-DC Building Trades are "assured of irreparable harm" because, left in effect, Defendants'

21

memoranda deprive them of the opportunity to negotiate and administer PLAs.

It is impossible to remedy injuries caused by interference with the collective bargaining process after the fact. *E.g.*, *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 938 (9th Cir. 1987). Here, Plaintiffs are experiencing an acute harm to their "ability to negotiate," which easily meets this Court's test for irreparable harm. *Fox Television Stations, Inc. v. FilmOn X LLC*, 966 F. Supp. 2d 30, 50 (D.D.C. 2013). For example, the Baltimore-DC Building Trades is already party to PLAs negotiated under Executive Order 14063. But for the DOD Memorandum, the Baltimore-DC Building Trades would also negotiate a PLA on the DOD's Marine Barracks project. Akerman Decl. ¶ 11. Therefore, absent a preliminary injunction, the Baltimore-DC Building Trades, like NABTU and its other affiliates, will have no opportunity to negotiate PLAs with contractors bidding on Defendants' large-scale construction projects. That harm cannot be remediated once a contract is awarded. *See O'Donnell Constr. Co. v. District of Columbia*, 963 F.2d 420, 428-29 (D.C. Cir. 1992) (holding that contractor that lost contracts because of government action suffered irreparable harm because of the "inherent[]" difficulty in obtaining adequate relief once contracts are granted).

Without a preliminary injunction, Plaintiffs will also suffer irreparable "damage to their contractual relationships." *Fox Television Stations, Inc.*, 966 F. Supp. 2d at 50. Again, take the Baltimore-DC Building Trades. Prior to Defendants' memoranda, the Baltimore-DC Building Trades negotiated two contracts under Executive Order 14063 with a contractor that was willing to negotiate more.

22

Akerman Decl. ¶ 9. But Defendant DOD's memorandum destroyed that continuing relationship, causing the breakdown of negotiations over PLAs on future large-scale government construction projects. *Id.* ¶ 11. That harm, which will certainly be experienced by NABTU and other of its affiliates, cannot be remedied unless Defendants are enjoined from evading Executive Order 14063's requirements.

### III. The Balance of Equities and Public Interest Support a Preliminary Injunction.

With respect to the final two factors, any harm to the Defendants and the public interest "are one and the same, because the government's interest *is* the public interest." *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016). And "[t]he public interest is served when administrative agencies comply with their obligations under the APA." *Damus v. Nielsen*, 313 F. Supp. 3d 317, 342 (D.D.C. 2018) (quoting *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009)). As explained above, issuing a preliminary injunction will ensure that DOD and GSA act in accordance with binding law and, in the case of DOD, are not enforcing a memorandum that is arbitrary or capricious.

23

**CONCLUSION**

This Court should grant Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

/s/ Jonathan D. Newman
Jonathan D. Newman (D.C. Bar No. 449141)
Lucas R. Aubrey (D.C. Bar No. 982849)
Jacob J. Demree (D.C. Bar No. 90012042)
SHERMAN DUNN, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 785-9300
newman@shermandunn.com
aubrey@shermandunn.com
demree@shermandunn.com

April 10, 2025

24